IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER JOHN HARRIS,** § | | |
| § | | |
| **Plaintiff,** § | | |
| § | | |
| v. § | No. 3:13-CV-605-BF | |
| § | | |
| **CAROLYN W. COLVIN,** § | | |
| **Commissioner of Social Security,** § | | |
| § | | |
| **Defendant.** § | | |

## MEMORANDUM OPINION & ORDER

Plaintiff Christopher John Harris ("Plaintiff") brings this action for judicial review of the Commissioner of Social Security's ("Commissioner's") final decision denying his claim for a period of disability, disability insurance benefits, and supplemental security income under Title II and Title XVI of the Social Security Act pursuant to 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision is AFFIRMED.

## Background

Plaintiff alleges that he is disabled due to a variety of ailments including strokes, diabetes, and depression. Tr. [D.E. 14-6 at 37]. After his applications for disability insurance and supplemental security income benefits were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge. That hearing was held on March 24, 2011. *See id.* [D.E. 14-2 at 44]. At the time of the hearing, Plaintiff was 48 years old. *See id.* [D.E. 14-2 at 37]. Plaintiff has a high school education and past work experience as a project manager, computer manager, and hardware support technician. *See id.* [D.E. 14-2 at 37]. Plaintiff has not engaged in substantial gainful activity since June 1, 2008. *See id.* [D.E. 14-2 at 31].

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability benefits or supplemental security income. *See id.* [D.E. 14-2 at 29]. Although the medical evidence established that Plaintiff suffered from diabetes mellitus, a history of cerebral vascular accident ("CVA"), cognitive disorder, depression, incipient cataracts, and vitreous hemorrhage, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. *See id.* [D.E. 14-2 at 31-33]. The ALJ determined that Plaintiff could not return to his past relevant work, but had the residual functional capacity to perform a full range of work at all exertional levels, but with the following non-exertional limitations: avoid concentrated exposure to temperature and weather extremes; not work in proximity to hazards, including driving a vehicle; not use 2-way radios, intercoms, or telephones for essential job duties; and not work in jobs that require depth perception or full field of vision. *See id.* [D.E. 14-2 at 33, 37]. Relying on the testimony of a vocational expert ("VE"), the judge found that Plaintiff was capable of working as a cleaner, garment sorter, and a marker - jobs that exist in significant numbers in the national economy. *See id.* [D.E. 14-2 at 38]. Plaintiff appealed that decision to the Appeals Council. *See id.* [D.E. 14-2 at 6]. The Council affirmed. *See id.* [D.E. 14-2 at 6]. Plaintiff then filed this action in federal district court.

## Legal Standards

A claimant must prove that he is disabled for purposes of the Social Security Act to be entitled to social security benefits. *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Act is "the inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are that:

(1) an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings;

(2) an individual who does not have a "severe impairment" will not be found to be disabled;

(3) an individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors;

(4) if an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" will be made; and

(5) if an individual's impairment precludes the individual from performing the work the individual has done in the past, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

*Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990) (paraphrasing 20 C.F.R. § 404.1520(b)-(f)).

The burden of proof lies with the claimant to prove disability under the first four steps of the five-step inquiry. *Leggett*, 67 F.3d at 564. The burden of proof shifts to the Commissioner at step five of the inquiry to prove that other work, aside from the claimant's past work, can be performed by the claimant. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989)). If the Commissioner demonstrates that other jobs are

3

available to the claimant, the burden of proof shifts back to the claimant to rebut such a finding. *Selders v. Sullivan* , 914 F.2d 614, 618 (5th Cir. 1990).

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits was supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan*, 38 F.3d at 236; 42 U.S.C.A. § 405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record as a whole to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

## **Analysis**

Plaintiff's appeal raises the following issues:

1. Whether the ALJ committed error by not re-contacting Dr. Deborah Whitehead Gleaves, the psychological consultant under SSR 96-7p;

2. Whether the ALJ erred in his analysis of Plaintiff's credibility; and

3. Whether the ALJ erred at step five in relying on the vocational expert's testimony to find Plaintiff capable of performing other work.

Pl.'s Br. [D.E. 18 at 1].

Plaintiff first contends that the ALJ should have re-contacted Dr. Gleaves because the ALJ noted at the administrative hearing that Dr. Gleaves' report was unclear on several issues, including

4

a limitation on the occupational adjustment as a result of his communicative disorder. *See id.* [D.E. 18 at 4]. Plaintiff points to SSR 96-7p which states as follows: "[w]hen additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements." *See id.* [D.E. 18 at 4]. Plaintiff contends that because the ALJ found that Plaintiff was not a credible witness, the ALJ was required under SSR 96-7p to re-contact Dr. Gleaves "so that a better understanding as to Plaintiff's condition and diagnosis could be understood in assessing Plaintiff's RFC." *See id.* [D.E. 18 at 5].

The ALJ noted that Dr. Gleaves' assessment that Plaintiff's "ability to communicate verbally is an impediment to his making appropriate occupational adjustments at this time" was not clear and that Dr. Gleaves' "report was not terribly clear on some of the other stuff as well." *See id.* [D.E. 14-2 at 97-99]. The ALJ decided to assign "no weight to the communication deficits proposed by Dr. Gleaves" because (1) "only 4 days earlier [Plaintiff] was described by Dr. [Bonnie J.] Lammers as having speech within normal limits;" (2) "considered in combination with the fact [Plaintiff], who reported grossly normal verbal expression after two months of therapy (Exhibit 13F, p. 3), described his only residual symptoms as including speech that was slower and higher in pitch when questioned by Dr. Lammers, convince[d the ALJ] at most [Plaintiff] would be precluded from using a 2-way radio, intercom, or phone for essential job duties;" and (3) "Dr. Gleaves assessed [Plaintiff] with a GAF of 70." *See id.* [D.E. 14-2 at 35-36]. Further, the ALJ's determination that Plaintiff was not disabled was based on a consideration of Plaintiff's testimony and the medical evidence in the record, which includes physical therapy records showing that Plaintiff "made excellent progress," "his memory loss improved," and his "cognition and verbal expression are grossly normal after two

5

months of therapy;" Dr. Lammers' consultative evaluation where Plaintiff was described as having "speech well within normal limits;" and that Plaintiff "who experienced 2 months of visual blurring prior to commencing treatment (Exhibit 19F, p. 3) acknowledged walking every 3 days for an hour each day (Exhibit 18F, p. 4), walking 1 hour per day 3 to 4 days a week (Exhibit 18F, p. 26), and walking every other day for about 60 minutes (Exhibit 18F, p. 43) between September 2010 and January 2011." *See id.* [D.E. 14-2 at 34-36].

Therefore, because the ALJ's decision to give no weight to Dr. Gleaves' assessment regarding Plaintiff's communication problems and because his determination that Plaintiff is not disabled is supported by other medical evidence in the record, the ALJ did not need to re-contact Dr. Gleaves to seek clarification. Further, the ALJ noted that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the [] residual functional capacity assessment." *See id.* [D.E. 14-2 at 34]. The ALJ noted that Plaintiff's "presentation at the hearing, specifically at times whispering, searching for words, squinting, and asserting difficulty remembering, and at times speaking fluently, gesturing with his arms, having no difficulty providing detailed facts/explanations, and demonstrating relaxed facial features, raise[d] significant questions about the credibility of the functional limitations alleged." *See id.* [D.E. 14-2 at 34]. SSR 96-7p states that "[w]hen additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements." Here, additional information was not needed as the ALJ made the credibility assessment based on the medical evidence in the record and Plaintiff's demeanor. Therefore, the ALJ was not required under SSR 96-7p to contact Dr. Gleaves.

6

Plaintiff further contends that the ALJ erred in relying on the VE's testimony that Plaintiff could perform the work of a cleaner, garment sorter, and marker because the vocational expert testified that the DOT does not list depth perception and that Plaintiff's attorney's question regarding an individual with depth perception problems "to where intermittently they could trip or not have the perception of where they're [stepping], miss a step, fall, something like that" may be "more of a medical question than a vocational question." *See id.* [D.E. 14-2 at 93]. Contrary to Plaintiff's contention that the VE testified that whether "Plaintiff could perform these jobs while having problems with depth perception and field of vision is beyond the scope of her employment as a vocational expert," the VE's testimony indicates that she was confused by Plaintiff's counsel's question and interpreted the question as one regarding an individual who could not walk or stand. *See id.* [D.E. 14-2 at 93]; Pl.'s Br. [D.E. 18 at 9]. The ALJ's hypothetical question included "no use of depth perception and no work that requires full field of vision and [for the VE to] just basically assume no vision in one eye . . . ." *See* Tr. [D.E. 14-2 at 89]. The VE testified that these limitations would not affect the positions of a garment sorter, marking clerk, or cleaner. *See id.* [D.E. 14-2 at 89]. Further, to the extent that Plaintiff is arguing there is a conflict between the VE's testimony and the DOT, the ALJ may properly rely on the testimony of the VE. *See Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000) ("To the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT in this case, we agree with the majority of the circuits that the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so."). Given that the record supports the VE's testimony regarding other work Plaintiff could perform, the ALJ properly relied on the VE's expertise.

## **Conclusion**

In sum, the ALJ's decision is supported by substantial evidence. Therefore, final decision of the Commissioner is AFFIRMED.

SO ORDERED, this 31st day of March, 2014.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE